(No. 14524.—Decree affirmed.)

## C. J. ALYEA, Appellee, *vs.* SAMUEL BARINGER *et al.* Appellants.

*Opinion filed February 21, 1923.*

1. SPECIFIC PERFORMANCE—*provision that vendor will bring suit to quiet title is valid—waiver.* A provision in a contract for conveyance that if the purchaser is not satisfied with the title disclosed by the abstract the vendor shall carry through to the Supreme Court proper proceedings to quiet the title and bear all expenses of such proceedings, including the purchaser's attorneys' fees, does not render the contract void, but the purchaser may waive all objections to the title and the benefit of such provision and elect to enforce the contract.

2. SAME—*what is not a waiver or abandonment of a contract.* Where the parties, after entering into a contract for a conveyance, enter into a second contract which by its terms supersedes the first, the bringing of a suit for performance of the first contract for the sole purpose of speedily settling the title does not amount to a waiver or abandonment of the second contract, where the record shows that the first suit was fictitious and that the parties did not intend by it to abandon the second contract.

3. SAME—*when participation in a fictitious suit is not a bar to specific performance.* Where a contract for a conveyance which supersedes a former contract provides for the institution of proceedings to quiet title, the fact that the purchaser consents to enter his appearance in a suit instituted by the vendors' attorney to specifically enforce the first contract as a speedy mode of settling the title, and which resulted in a decree against the purchaser from which he appealed, does not bar him from electing to take the title as it stands and enforce the second contract, where the vendors secured the dismissal of the appeal and nullification of the decree by proceedings in the Supreme Court, in which they disclaimed the first contract and recognized the second one.

4. ESTOPPEL—*when participation in unlawful proceeding is not an estoppel.* Where a complainant in a bill for specific performance does not have to trace his title or right through any unlawful proceeding or act, the party defending cannot defeat the complainant's right by setting up an unlawful proceeding or unlawful act of the complainant in which the defendant himself participated.

5. JUDGMENTS AND DECREES—*what amounts to nullification of a decree.* Where the complainants in a suit for specific performance, after securing a decree from which the defendant appealed to the

Supreme Court, file motions in the Supreme Court to dismiss the appeal, to release the appellant from the obligations of the decree and to have themselves discharged from its obligations on the ground that such contract had been superseded and that the suit was fictitious, the allowance by the Supreme Court of the motions nullifies the decree, and it cannot be invoked to defeat a suit by such appellant to enforce the second contract.

. APPEAL from the Circuit Court of Woodford county; the Hon. STEVENS R. BAKER, Judge, presiding.

LIVINGSTON & WHITMORE, and T. W. HOOPES, for appellants.

ERNEST A. RICH, (KENNEDY & KENNEDY, and ROY A. NUTT, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellants, Samuel C. Baringer and Alice M. Baringer, his wife, have prosecuted this appeal from a decree of the circuit court of Woodford county in favor of C. J. Alyea, appellee, for the specific performance of a contract, hereinafter referred to as the second contract.

Samuel C. Baringer on December 16, 1918, was the owner of 40 acres of land and Alice M. Baringer was the owner of 80 acres of land, all in Woodford county. On that date they entered into a contract with C. J. Alyea by the terms of which appellants were to convey by a good and sufficient warranty deed the 120 acres of land, clear of all incumbrances, if appellee should first make the payments and perform his covenants. Appellee was to pay $1000 cash, and he paid it on that date. He was to pay $9000 March 1, 1919, at which time he was to receive the deed to the land. He was also to execute and deliver to appellants a note for $26,000, secured by mortgage on the premises, to be a first lien, the note to be dated March 1, 1919, and payable March 1, 1922, with six per cent interest, payable annually. The mortgage was to provide for the payment of

appellants' attorney's fees in case of default in payment of interest or principal and foreclosure. An abstract of title was to be, and was, furnished by appellants to appellee on the date of the contract, and appellee was to have ten days in which to examine it, and was to return it to appellants by December 26, 1918, with any objections he might have, and appellants were to have the right to refund the money paid and have the contract canceled if objections were made, without penalty to either party, or the parties might make any other arrangements agreed upon. It was further provided that if any objections were found to the title appellants should cure the defects according to law, and in case appellee failed to make subsequent payments, the contract was to be determined and the payments made were to be retained by appellants in full satisfaction and in liquidation of all damages by them sustained. Time was made the essence of the contract.

The abstract was examined by appellee's counsel and he expressed some doubts as to whether or not the title to Mrs. Baringer's 80 acres was good and merchantable. There was no question as to the title to the other 40 acres. It was conceded that Jacob Baringer, father of Samuel, died testate, seized in fee simple of an 80-acre tract, leaving Samuel as his only child and heir. By his will, which was duly probated, Jacob Baringer devised the 80 acres to his son, Samuel, for life, and also devised it to his grand-daughter, Mary Alice Baringer, for her life, subject to the life estate of Samuel. He then, subject to said life estates, devised the land in fee simple to the child or children of Mary, if she should have a child or children before her death, and in the event she has no child or children, then, subject to the life estate of Samuel, he devised the land to the testator's grandson, Ralph Baringer, and if he should not survive Mary, the land was by the will to go in fee simple to the child or children of Ralph if Mary had no child or children. Afterwards, in June, 1916, Mary conveyed her in-

terest in the 80 acres to her father, Samuel. Ralph died in Oregon, Illinois, October 19, 1918, leaving a widow but leaving no children or descendants of children surviving. On November 6, 1918, appellants conveyed by warranty deed the land to their daughter, Mary, and on November 9, 1918, Mary, an unmarried woman who had never had a child, conveyed said land by warranty deed to her mother, Alice M. The aforesaid deeds were made for the express purpose of destroying the contingent remainders and of vesting the complete title to the land by merger in Alice M. The doubts of appellee's counsel concerning the title were upon the question whether or not the contingent remainders aforesaid were destroyed and the complete title vested in Alice M. Baringer by the deeds.

Both appellants and appellee were very anxious at this time that the title to the land be made satisfactory and that the performance of the contract be consummated. There was another 40 acres of land then owned by appellants the title to which was in practically the same condition as that of the 80-acre tract. The purchase price to be paid to appellants by appellee for the 120 acres was very satisfactory to appellants. The most they had ever been offered for the land previous to this contract of sale was $200 per acre, which was $100 less per acre than the price for which they had contracted it. Land at that time was in great demand and bringing a good price, and they were not only anxious to have the title to the 120 acres made satisfactory to appellee, but they were also anxious to have in the same suit the title to the other 40 acres made good beyond question, so they could sell it. Appellee had not, in fact, refused to perform the contract on account of the unsatisfactory condition of the title but had simply raised objections to the title. He was just as anxious to perform his contract and obtain the land as appellants were for him to take it when all questions of title were settled. There was an understanding between the parties that appellants would institute pro-

ceedings to quiet the title to the 120 acres, and also in the same suit include appellants' other 40 for the purpose of having the title to it quieted at the same time. Appellants were willing to pay all cost of the litigation and assured appellee that he would incur no expense whatever by such proceedings. Accordingly they entered into a second contract on January 8, 1919, with appellee, which by its terms was to supersede and take the place of the first contract. By the terms of the second contract the $1000 cash payment was to be retained by appellants and they were to pay him six per cent interest thereon from December 16, 1918, to March 1, 1920, at which latter time the contract was to be finally executed after the title had been made satisfactory. The $9000 payment was to be paid on March 1, 1920, and at the same time appellants were to deliver their warranty deed to appellee and he was to execute the $26,000 note and mortgage, which was to come due March 1, 1923, and draw the same rate of interest as provided in the first contract. The second contract also provided that appellants should convey to appellee a merchantable title and give him an abstract of title brought down to date, the abstract to be furnished to him on or before December 16, 1919, with privilege to examine it and return it by December 26, 1919, with his objections thereto, and give appellants an opportunity to cure any defects therein shown. The contract was written up and signed and sealed by all the parties according to its provisions, and it recited the fact of the making of the first contract and that objections to the title were made, and then followed this provision: "It is understood and agreed that said first party [appellants] shall carry through to the Supreme Court of the State of Illinois proper proceedings to quiet the title in the party of the first part and secure a decree from said court showing merchantable title in said first party. It is also agreed that said first party shall bear all expenses in connection with said proceedings, including any expense to which the party

of the second part may be put, including his reasonable attorneys' fees."

There was no agreement between appellants and appellee as to the character of suit that was to be brought by appellants to settle the question of the title except as disclosed in the second contract, until some time after it was signed. This matter was left entirely to appellants. It was to be their task and at their expense. After the second contract was signed they selected W. L. Elwood, of Peoria, a very competent attorney, to bring the suit. On looking into the matter he determined, without consulting appellee or his attorney, that the proper method of settling the question of title was to institute a suit in the circuit court of Woodford county in the name of appellants against appellee for the specific performance of the first contract and to file the bill after March 1, 1919, which was the date that contract was to be consummated. He prepared the bill on or before that time and filed it March 8, 1919, to the April term of that court. The bill set out the first contract and alleged that appellants had tendered appellee a conveyance but that he refused to comply with the contract. It set out the will of Jacob Baringer and the conveyances that had been made to destroy the contingent remainders, with other allegations, and the usual prayer for the specific performance of the contract. On January 9, 1919, Elwood wrote Samuel C. Baringer, inclosing him the original bill to be filed and a copy, suggesting to him that the bill was written as though prepared after the first of March, and also inclosing him a written entry of appearance. Elwood directed him to take them to appellee and his attorney, Rich, and let them examine them and sign the entry of appearance if appellee was willing to do so. On February 25, 1919, Rich wrote Elwood stating that Baringer had shown him Elwood's letter and the papers relative to the steps which were proposed to quiet the title by filing a bill for specific performance instead of filing a bill to quiet title, as

was originally planned. Rich further stated in the letter that as that method was entirely new and involved Alyea in a suit which he had not contemplated, he desired to take this matter up with Elwood for discussion before taking further steps.

The record discloses that the method of settling the title by a bill for specific performance of the first contract originated entirely with the Baringers and their attorney after the second contract had been made, as the best and most convenient as well as the quickest method to reach the desired result and have this court review the record of that decree, no matter what it might be. Elwood suggested to Rich that he would do all the work as the Baringers' attorney, in both courts, and it was distinctly understood that the Baringers would bear all expense, including the cost of an appeal or a writ of error prosecuted to this court for a review of the record by the party against whom the decree was entered in the circuit court. Accordingly the entry of appearance in the circuit court was signed by appellee, and at the further suggestion of Elwood a general demurrer to the bill prepared by him was signed by Rich, as attorney for appellee. This demurrer was overruled by the circuit court and a decree for specific performance was entered against appellee, as no further pleading was filed by him, and the usual prayer for appeal to this court was made. An appeal bond was signed by the appellee and the record was prepared for review by Elwood. The abstracts and the briefs filed in this court were all prepared by Elwood, the same being merely formally signed by Rich, except the briefs filed by the Baringers as the appellees in that appeal, which were also prepared by Elwood. Elwood also paid to Rich the clerk's fees in this court that were required to be advanced, and Rich then paid the clerk the fees by his personal check. Elwood rushed the matter and got the appeal ready to be considered by this court, which took the cause under advisement at the June term, 1919.

Up to this time the parties acted with the utmost good
faith, with the sole view of getting the matter of the title
settled by a decision of this court, with the full intention
on their part of carrying out the provisions of the second
contract as therein provided if the decree of the circuit
court should be affirmed and the title to the property there-
by settled. The bill for specific performance was not filed
with the intention of compelling specific performance on
the part of the defendant but with the sole view of settling
the title. The record discloses these facts by the testimony
of Baringer, and he never at any time, according to his
own testimony, tendered a deed to Alyea or made any kind
of an offer to perform his first contract or the second con-
tract. The only evidence of a refusal to perform on the
part of Alyea is found in his confession of the facts stated
in the bill for specific performance by filing his demurrer
to the bill at the suggestion of the Baringers' attorney, and
his apparent prosecution of the appeal to this court was for
the purpose solely of aiding the Baringers in getting their
title settled.

During the time that the appeal was pending in this
court, as the record discloses, the market value of the land
in question had advanced more than twenty-five per cent,
and because of this fact appellants determined that they
would not perform their second contract with the appellee.
They were advised by other attorneys that they could defeat
such performance, and they employed the other attorneys
for that purpose. Accordingly, on October 10, 1919, they
filed their motion in this court to dismiss the appeal, in
which motion they alleged that after the contract entered
into between them and Alyea, which is set out in the bill
in said cause, they and Alyea entered into the second con-
tract, which is set out in full in the motion. They further
set forth that the second contract in effect nullified the first
one, and that in fact and in law there was no such contract
in existence as the one set forth in the bill at the time the

bill was filed; that the second contract has never been aban-
doned by them; that they are unacquainted with the differ-
ent kinds of legal actions, and supposed that the bill filed
was for the purpose of quieting the title to the land, as
provided in the second contract. Subsequently, at the same
term of this court, appellants filed another motion to file a
release in this court releasing appellee from all liability un-
der the decree entered by the circuit court, and alleging as
ground therefor that the decree was entered on a contract
that did not exist in fact or in law, as appeared by their
former motion, and that they should not retain any rights
obtained in such manner. Both of said motions were al-
lowed by this court at the October term, and appellants filed
their written release, by which they released and discharged
appellee from all liability and obligation under the decree
of the circuit court, and this court on further consideration
of said motions ordered that the appeal be dismissed, and
that appellees therein recover from the appellant therein the
costs by them expended in that appeal.

No further attempt was made by appellants to institute
a further or other suit to quiet or otherwise have settled
or determined the character of their title to the land, as
provided in the second contract. They refused absolutely
to perform their second contract or to further recognize it
in any way. Appellee offered to perform it and tendered
full performance to appellants in every particular and made
his offer and tender within the time required, and all such
offers and tenders were refused by appellants. Thereafter
appellee filed his bill at the April term, 1920, of the circuit
court of Woodford county against appellants for the spe-
cific performance of the second contract. Appellants ap-
peared and filed an answer to the bill, denying that appellee
had at all times been willing to comply with the agreement
but had refused to accept a conveyance of the land on the
sole ground that the title to the same was not merchantable;
that appellants had a merchantable title in fee on Decem-

ber 15, 1918, and have had ever since; and they set up
the prior bill filed by them for specific performance and
the proceedings thereunder, including the decree for specific
performance against him. They further alleged that ap-
pellee was estopped by his acts, and alleged that they had
tendered back the $1000 paid them and that it was refused
by appellee, and that they had deposited the same with the
clerk for him. Replication was filed and the cause was re-
ferred to the master in chancery, who took the evidence and
found therefrom that the bill had been substantially proved,
and that the former suit was simply a means adopted to
quiet the title and was not a bar to this suit, and recom-
mended a decree for appellee. Objections filed to the mas-
ter's report stood as exceptions before the court. The
court overruled the exceptions and entered a decree for
specific performance.

It must be conceded that but for the fact of the institu-
tion of the suit for specific performance on the first con-
tract, which had been superseded by the second contract,
and the part that appellee took in that suit, it was his right
to have specific performance of the second contract even
though appellants had refused to institute any kind of suit
to test the title. In other words, appellee had a right to
waive that provision in the second contract and make his
election to accept the title without further question. That
is what he did, and all of his actions were timely and suf-
ficient to entitle him to the decree in the case. The only
thing contained in appellants' briefs and argument that ap-
pears to be contrary to this view is the fact that they as-
sume that the second contract is a void contract and not
enforcible because of the provisions in it that we have al-
ready quoted. In making this claim they seem to assume
that in those quoted words the agreement between the par-
ties in this part of the contract was that appellants should
institute the fictitious suit for specific performance for the
purpose of testing the sufficiency of their title, and that ap-

pellants should bear all expenses of that suit, including any expense to appellee, together with his reasonable attorney's fees. The record, as already shown, clearly disputes any such an intention of the parties. The fictitious suit originated in the mind of the appellants' attorney after the second contract was written, and such a suit was never in contemplation when the second contract was drafted. The second contract is valid in every particular, so far as we are able to see, and such a contract has often been sustained by this court, or contracts very similar thereto.

It is argued by appellants that the second contract was waived or abandoned by the parties by the bringing of the suit for specific performance on the first contract. It is a clear proposition that the parties could have waived or abandoned the second contract and have proceeded under the first one if they had desired to do so. The record shows clearly that they did not abandon the second contract, and appellants so alleged in their motion to dismiss the appeal in this court. They undertake now to say that this allegation is not binding on them. This position is untenable. It was necessary for them to make that allegation in that motion to forestall the conclusion that the parties had abandoned the second contract, as they had a right to do. When that allegation was made, together with the other allegations in the motion, there was only one conclusion left for this court to draw, and that was that the suit was a fictitious suit or a suit upon a contract that did not in fact exist and that the parties were trifling with the court.. It was upon this ground that the appeal was dismissed and costs adjudged against appellants in that suit.

It is further argued that appellee should have filed ·a cross-bill for specific performance on the second contract in the suit for specific performance of the first contract. · We are not able to conceive of any reason for filing such a cross-bill, and if appellee had done so he could not have recovered on his cross-bill for the simple reason that the time

for performance or for the consummation of the contract as fixed in the second contract had not arrived even at the time the appeal in the former suit was dismissed. Therefore the position of appellants that appellee by failing to file such cross-bill cannot avail himself of his right under· the second contract is shown to be unsound. It is true that appellee could have defeated the suit in the circuit court by setting up in his answer the existence of the second contract and that it had not been abandoned, and the only real question now left for consideration is whether or not the participation by appellee in that fictitious suit is a bar to his recovery in the present suit.

The complainant in this suit is in no way relying upon the decree of the court in the fictitious suit or any of the actions of the parties therein. To make out his case in this court he did not have to rely, and does not rely, upon that decree. Conceding the statement of appellants to be true that the bringing of that suit by them and the participation therein by appellee was a fraud on both courts, appellee does not trace his title or his rights by or through that fraudulent action. Appellants are the parties who are now relying upon that fraudulent action as a weapon to defeat appellee's rights in this case, and they are the parties who originated the fraudulent scheme, if it be fraudulent, and persuaded appellee, against his will and protest, to engage in that suit as he did, and they did this for their own personal means of carrying out their second contract to have their title tested by a suit to a final conclusion in this court. Had they elected, as they might have done, to await the time for performance of the second contract and had instituted a suit on that contract for specific performance in good faith they could have avoided the engagement in a fictitious suit and have compelled specific performance in a legal way, if it should have been finally determined that they had a fee simple title, as they now contend.

It is repeatedly stated by appellants that the decree in the first suit is binding on appellee and precludes him from enforcing the second contract. They also state that the decree in the first suit was sufficient to estop appellee in this suit, as this is a collateral proceeding. Appellee is not attacking that decree. The decree is for specific performance of the contract, if there is any decree, but the fact is that that decree is completely annulled by the proceeding of appellants in this court on the former appeal. By their own action they released and discharged appellee from all obligations thereof, and at the same time they discharged themselves, or had themselves discharged, from all obligations of that decree on the ground that it was a fictitious suit and a nullity. The force and effect of that decree are as completely gone as if they had instituted a suit or a proceeding to have the decree expunged from the record of the circuit court upon the charge that it was fictitious and fraudulent and void. To permit appellants' defense in this case that the appellee cannot ask specific performance on the ground, simply, of his participating in the fictitious suit is to allow appellants to profit by their own wrong. That fraudulent suit, as they term it, was their own scheme, by which they sought to discharge a legitimate obligation to appellee, in which he unwillingly took part but did so for their own accommodation. We are disposed to follow the rule that where a party in court does not have to trace his title or right through any unlawful proceeding or act, the other party defending cannot defeat his right by setting up the unlawful proceeding or the unlawful act participated in by himself.

We hold that appellee is entitled to specific performance of the contract under the evidence in the record, and that there is no principle of law or equity that is in the way of an affirmance of the decree.

The decree of the circuit court is affirmed.

*Decree affirmed.*